**Opinion issued December 31, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**Nos. 01-18-00508-CV, 01-18-00510-CV**

———————————

**KAREN SANDERS, THEODORE CHASE, KEVIN PEVER, HASSAN GEBARA, LINDSEY VILLANUEVA, TAMISHA SHELTON, KENNETH WILLIAMS, TIMISHA KIMBLE, ROSEMARY EJIOFOR, and ROSEMARY EJIOFOR AS NEXT FRIEND OF DESTINY EJIOFOR, Appellants**

**V.**

**KANTI BANSAL D/B/A SIGNATURECARE EMERGENCY CENTER, ROUND TABLE PHYSICIANS GROUP, PLLC, CHYNA CORALLINO, and LISA SNYDER, Appellees/Cross Appellants**

**V.**

**KAREN SANDERS, THEODORE CHASE, KEVIN PEVER, HASSAN GEBARA, LINDSEY VILLANUEVA, TAMISHA SHELTON, KENNETH WILLIAMS, TIMISHA KIMBLE, and ROSEMARY EJIOFOR, Cross-Appellees**

**MEMORANDUM OPINION**

In two separate appeals which we consider together, appellants/cross-appellees Karen Sanders, Theodore Chase, Kevin Pever, Hassan Gebara, Lindsey Villanueva, Tamisha Shelton, Kenneth Williams, Timisha Kimble, and Rosemary Ejiofor in both her individual capacity and as next friend of her daughter, Destiny Ejiofor ("the Patients"), appeal the trial court's dismissal of their fraudulent lien suits against appellees/cross-appellants Kanti Bansal *d/b/a* SignatureCare Emergency Center, Round Table Physicians Group, PLLC, Chyna Corallino, and Lisa Snyder (collectively, the Providers), pursuant to the Texas Citizen's Participation Act (TCPA). In a single issue, the Patients argue that the trial court erred in granting the Providers' motions to dismiss because (1) the Providers did not carry their burden to show that the Patients' claims are based on TCPA-protected communications, (2) the Patients' claims are excluded from the TCPA's dismissal procedures under the commercial speech exemption, and (3) the Patients presented sufficient evidence to establish a prima facie case to support their claims.

The Providers assert in a single issue on cross-appeal in the Sanders case that the trial court abused its discretion in determining the amount of attorney's fees and sanctions it awarded them.

We reverse the trial court's orders dismissing the Patients' cases and awarding attorney's fees and sanctions, we dismiss as moot the Providers' sole issue on cross-appeal, and we remand the cases to the trial court for proceedings consistent with this opinion.

**Background**

On various dates between December 2014 and November 2016, each of the Patients was treated at SignatureCare Emergency Center, an emergency medical care facility, by physicians working together as Round Table Physicians Group PLLC, for injuries sustained in separate car accidents. Shortly after each Patient was treated, both SignatureCare and Round Table, through their representatives Chyna Corallino and Lisa Snyder, filed individual "hospital liens" to secure payment for their medical services from any lawsuit, or the proceeds or settlement therefrom, that the Patients file against the parties responsible for the accidents that caused their injuries, pursuant to Texas Property Code chapter 55. *See* TEX. PROP. CODE ANN. § 55.002(a) (stating that, subject to certain conditions, hospital has lien on cause of action of patient who receives hospital services for injuries caused by accident attributed to another's negligence).

3

After she was given notice of the hospital liens, Rosemary Ejiofor filed two separate fraudulent lien suits against appellees Dr. Kanti Bansal *d/b/a* SignatureCare Emergency Center, Round Table Physicians Group, and Chyna Corallino—one in her own right, and the other as next friend of her daughter, Destiny. Not long thereafter, on various dates between February and March 2017, each of the remaining Patients, represented by the same attorney, filed a separate, virtually identical, suit against Dr. Bansal *d/b/a* SignatureCare Emergency Center, Round Table Physicians Group, and Lisa Snyder.

The petitions in each of the ten lawsuits alleged that the Providers filed the hospital liens with the knowledge that they were not eligible to do so because they are not "hospitals" or "emergency medical services providers" as those terms are defined by the hospital lien statute, *see* TEX. PROP. CODE ANN. § 55.001(2), (3) (setting out definitions), and that this violated Texas Civil Practice & Remedies Code section 12.002, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(a), (b) (stating that person is liable for making, presenting, or using document knowing that it is fraudulent lien, if that person intended for document to be given same legal effect as court record or document and intended to cause another person financial or physical injury, or mental anguish or emotional distress).

On May 8, 2017, the Providers jointly filed TCPA motions to dismiss both of Ejiofor's fraudulent lien suits. They argued that their recording of the hospital

lien notices constituted the lawful exercise of the rights to free speech and petition and that Ejoifor had not presented clear and specific evidence of her fraudulent lien claims as required to survive a TCPA motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.005(b) (requiring court to dismiss legal action if moving party shows by preponderance of evidence that action is "based on, relate[d] to, or is in response to" moving party's exercise of right of free speech, petition, or association); 27.005(c) (stating that court may not dismiss legal action if nonmovant establishes "by clear and specific evidence a prima facie case for each essential element of the claim in question"). The Providers also requested attorney's fees and sanctions. *See id.* § 27.009(a) (stating that if court orders dismissal, it "shall award" moving party court costs, reasonable attorney's fees, and other expenses, as well as sanctions sufficient to deter plaintiff from bringing similar actions).

Ejiofor, in both of her capacities, filed nearly identical responses, arguing that the Providers failed to show by a preponderance of the evidence that their fraudulent lien claims were based on, related to, or in response to the Providers' exercise of their free speech or petition rights in filing the hospital lien notices. *See id.* § 27.005(b). In other words, Ejiofor argued that the Providers' notices of the hospital liens were not TCPA-protected communications. She also argued, in the alternative, that in each of the two cases, she had met her burden to establish a

prima facie case for each element of her fraudulent lien claims by clear and specific evidence. *See id.* § 27.005(c).

After holding a combined hearing on the Providers' TCPA motions to dismiss Ejiofor's two separate fraudulent lien actions, the trial court signed separate orders granting the Providers' motions and holding their requests for fees and sanctions until a later hearing. Ejiofor filed motions to reconsider in both cases.

Shortly thereafter, pursuant to the Providers' unopposed motion, the trial court consolidated all of the Patients' cases, except for Ejiofor's case filed as next friend of Destiny Ejiofor, which retained its own cause number (17-DCV-239862) (the Ejiofor case), into Ejiofor's case filed in her own right (17-DCV-239861) (the Sanders case). The Providers then jointly filed eight TCPA motions to dismiss and requests for attorney's fees and sanctions in the Sanders case, one for each of the eight cases that had been consolidated with Ejiofor's action on her own behalf.

In August 2017, the trial court held a hearing on the Providers' eight TCPA motions to dismiss the fraudulent lien suits as well as on the motions to reconsider filed in the two Ejiofor cases (one of which was now part of the consolidated Sanders case). After hearing argument of counsel, the trial court orally granted the Providers' eight TCPA motions to dismiss the fraudulent lien suits, denied both of Ejiofor's motions to reconsider its prior rulings, and held the issue of attorney's

6

fees and sanctions for a later date. The trial court then signed separate orders dismissing each of the eight consolidated fraudulent lien cases and stating that it would award the Providers attorney's fees and sanctions pursuant to the TCPA in amounts to be determined at a subsequent hearing.

In March 2018, the trial court held an evidentiary hearing to determine the amount of attorney's fees, costs, and sanctions to award the Providers in conjunction with its dismissal of all ten cases pursuant to the TCPA. It then signed a final judgment disposing of Ejiofor's fraudulent lien case as next friend of Destiny Ejiofor and a separate final judgment disposing of all nine fraudulent lien cases in the consolidated action; both final judgments included attorney's fees, costs, and sanctions awards for the Providers under the TCPA.

Ejiofor filed a notice of appeal in her case as next friend of her daughter, Destiny (the Ejiofor case, appellate cause number 01-18-00510-CV), and the nine plaintiffs jointly filed a notice of appeal in the consolidated cases (the Sanders case, appellate cause number 01-18-00508-CV). The Providers filed a notice of cross-appeal in the Sanders case, challenging the amount of the trial court's attorney's fees and sanctions awards. We address both appeals (and the cross-appeal) in this opinion.

**Dismissal under the TCPA**

*A.     Standard of Review*

We review de novo the denial of a TCPA motion to dismiss. *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *see also Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 199 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (applying de novo standard to TCPA motion to dismiss denied by operation of law) (citing *Avila v. Larrea*, 394 S.W.3d 646, 652–53, 656 (Tex. App.—Dallas 2012, pet. denied)). In determining whether to grant or deny a motion to dismiss, the court must consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). We view the evidence in the light most favorable to the nonmovant. *Dolcefino*, 540 S.W.3d at 199; *see Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 214 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

*B.     TCPA's Statutory Scheme*

The TCPA was enacted "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government" against infringement by meritless lawsuits.[1] TEX. CIV. PRAC. & REM.

---

[1]     We note that, in its most recent session, the Texas Legislature amended the TCPA. The amendments became effective September 1, 2019. Because this suit was filed before September 1, 2019, it is governed by the statute as it existed before the amendments, and all of our citations and analysis are to that version of the statute.

CODE ANN. § 27.002. To achieve this purpose, the TCPA provides for expedited dismissal if the moving party shows by a preponderance of the evidence that a legal action filed against it is based on, relates to, or is in response to the moving party's exercise of the right of free speech, the right to petition, or the right of association. *Id.* § 27.005(b).

If the movant establishes that a suit is based on protected communications, the trial court must dismiss the action unless the non-movant establishes by "clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c); *accord In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding) ("In reviewing [the motion to dismiss], the trial court is directed to dismiss the suit unless 'clear and specific evidence' establishes the plaintiffs' 'prima facie case.'" (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c)).

Importantly, section 27.010 exempts certain types of legal actions from the TCPA altogether. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010. For example, as asserted in this case, the commercial-speech exemption removes certain commercial speech from the Act's protections. *See id.* § 27.010(b). The party asserting the exemption bears the burden of establishing its applicability. *Schimmel*

---

1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–12, 2019 Tex. Sess. Law Serv., 684, 684–87 (codified at TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011).

9

*v. McGregor*, 438 S.W.3d 847, 857 (Tex. App.—Houston [1st Dist.] 2014, pet.

denied).

## C.     *The Commercial Speech Exemption*

Because it is dispositive, we limit our analysis to the Patients' argument that

their fraudulent lien suits are not subject to the TCPA's dismissal procedures

because the communications at issue—the Providers' hospital liens—are exempted

commercial speech. *See* TEX. R. APP. P. 47.1 (stating that appellate courts must

address every issue raised that is necessary to final disposition of appeal); *see also*

*Santellana v. CentiMark Corp.*, No. 01-18-00632-CV, 2019 WL 1442228, at \*3

(Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet.) (mem. op.) (stating that

commercial speech exemption constitutes independent ground "that can fully

support a trial court's denial of a motion to dismiss filed pursuant to the TCPA").

According to the Patients, the Providers' hospital liens are nothing more than

attempts to collect payment owed on business transactions and, as such, are not

TCPA-protected. We agree.

The TCPA's commercial speech exemption excludes from the TCPA's

summary dismissal provisions any

> legal action brought against a person primarily engaged in the
> business of selling or leasing goods or services, if the statement
> or conduct arises out of the sale or lease of goods, services, . . .
> or a commercial transaction in which the intended audience is
> an actual or potential buyer or customer.

TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b).

The Texas Supreme Court in *Castleman v. Internet Money Limited* clarified that the commercial speech exemption applies when (1) the TCPA movant was primarily engaged in the business of selling or leasing goods or services; (2) the TCPA movant made the statement or engaged in the conduct on which the claim is based in his capacity as a seller or lessor of those goods or services; (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the TCPA movant provides; and (4) the intended audience of the statement or conduct was the TCPA movant's actual or potential customers for the kind of goods or services he provides. *See* 546 S.W.3d 684, 688 (Tex. 2018) (per curiam) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b)).

The Patients contend that the Providers' hospital liens meet all of these requirements and thus do not trigger the TCPA's dismissal procedures. They rely on *East Texas Medical Center Athens v. Hernandez*, in which the Tyler Court of Appeals held that although the hospital lien East Texas Medical Center filed to secure payment for treating injuries Hernandez sustained in a car accident was an exercise of free speech, it constituted commercial speech, and as such, it was not subject to the TCPA's dismissal procedures. *See* No. 12-17-00333-CV, 2018 WL 2440508, at *3–4 (Tex. App.—Tyler May 31, 2018, pet. denied) (mem. op.).

11

Regarding the first and second requirements of the exemption, the Patients argue that the Providers, like East Texas Medical Center, are primarily engaged in the business of selling health care services, and that they filed the hospital liens in that capacity. *See id.* at *4; *see also Castleman*, 546 S.W.3d at 688 (setting forth four requirements of commercial speech exemption). The Providers respond that their primary business—treating injured patients—is not a "commercial activity," because selling medical services is "merely ancillary to [their] primary business of treating sick and injured patients." We recently rejected this precise argument. *See N. Cypress Med. Ctr. Operating Co. GP, LLC v. Norvil*, 580 S.W.3d 280, 286 (Tex. App.—Houston [1st Dist.] 2019, pet. denied).

The plaintiff in *Norvil* brought a declaratory judgment action against North Cypress arising out of its assertion of a hospital lien to recover for treating injuries she sustained in a slip and fall accident. *Id.* at 282–83. The trial court denied North Cypress's TCPA motion to dismiss the plaintiff's case. *Id.* at 283. On appeal, North Cypress argued that the selling of goods and services was ancillary to its primary purpose of treating sick and injured people. *Id.* at 285. Noting that "[t]he business of selling or leasing goods or services and the business of treating sick and injured people are not mutually exclusive activities," we held that by filing the hospital lien to recover fees for services rendered, North Cypress was acting in its capacity as a seller of the healthcare services it had provided to the plaintiff. *Id.* at

286 (quoting *Tyler v. Pridgeon*, 570 S.W.3d 392, 398 (Tex. App.—Tyler 2019, no pet.)). Therefore, it could not seek dismissal of the plaintiff's declaratory judgment action under the TCPA on the ground that it was merely exercising its free speech rights in seeking payment for having treated the plaintiff's injuries. *Id.* The same is true here—the Providers were primarily engaged in the business of selling health care services and they filed the hospital liens in that capacity, not as an exercise of their free speech or petition rights. *See id.*; *Pridgeon*, 570 S.W.3d at 398.

Regarding the third requirement for application of the commercial speech exemption—that the statement arose out of a commercial transaction involving the kind of services the Providers provided—the Providers do not dispute that they filed the liens to secure payment for the health care services they provided to the Patients. *See Castleman*, 546 S.W.3d at 688 (stating requirements for commercial speech exemption). But they maintain that because the liens were filed to secure payment for services *already* rendered, they do not constitute commercial speech. According to the Providers, for a statement to arise out of a commercial transaction, it must be made for the purpose of securing a future sale. For this proposition, they rely on the Texas Supreme Court's statement in *Castleman* that the commercial speech exemption applies only to "communications made not as a protected exercise of free speech by an individual, but as 'commercial speech which does no more than propose a commercial transaction.'" *See id.* at 690

13

(quoting *Posadas de P.R. Assocs. v. Tourism Co. of P.R.*, 478 U.S. 328, 340 (1986)). As discussed below, this statement does not purport to refine the exemption's third requirement; rather, it differentiates between speech directed to customers and speech directed elsewhere, as part of the analysis of the fourth requirement.

In *Castleman*, Castleman hired O'Connor and his company, a "virtual assistant" services provider, to receive and fulfill customer orders placed through Castleman's website. *Id.* at 685. A dispute arose, and Castleman demanded compensation for O'Connor's alleged over-ordering. *Id.* When O'Connor refused to pay, Castleman published statements about the dispute on various online platforms, with the stated goal of warning other business owners of what he considered to be O'Connor's poor performance. *Id.* O'Connor then sued Castleman for defamation. *Id.* Castleman filed a TCPA motion to dismiss, and the trial court denied the motion, agreeing with O'Connor that the commercial speech exemption applied and the suit was not subject to the TCPA's dismissal procedures. *Id.* at 685–86. The court of appeals affirmed based on the commercial speech exemption. The Texas Supreme Court reversed, holding that because the intended audience of Castleman's speech was not its own, but rather, O'Connor's customers, the fourth requirement of the exemption was not met: "Castleman intended his statements to reach O'Connor's actual or potential customers. His statements constituted

14

protected speech warning those customers about the quality of O'Connor's services, not pursuing business for himself." *Id.* at 691.

Contrary to the Providers' assertion, *Castleman* did not limit the applicability of the exemption to speech intended to secure future sales. *See id.* at 688; *see also Norvil*, 580 S.W.3d at 286 (citing *Castleman*, 546 S.W.3d at 690) (recognizing that exception applies only to "commercial speech which does no more than propose a commercial transaction" and holding that hospital lien "arose out of a commercial transaction" involving provision of healthcare services).

Turning to the fourth requirement, the Patients argue that they were actual customers of the Providers' health care services and thus were the intended audience of the liens. *See id.* (stating that intended audience of statement or conduct must be defendant's actual or potential customers for kind of goods or services he provides). They rely on the holding in *Hernandez* that because a hospital has no contractual or tort rights against the third-party tortfeasors, "the only true support for a hospital lien is via a claim for reimbursement," which "is necessarily a claim against [them] as the owner[s] of those proceeds." *See Hernandez*, 2018 WL 2440508 at *4.

The Providers, on the other hand, argue that the liens' intended audience is any third-party tortfeasor who might be responsible for the Patients' injuries. An examination of the statute and its purpose compel us to disagree.

15

Property Code chapter 55—the hospital lien statute—creates a lien in favor of hospitals who treat certain patients allegedly injured by the negligence of a third party. *See* TEX. PROP. CODE ANN. § 55.002(a) (stating that hospital has lien on patient's cause of action for payment for treatment of injuries caused by accident attributed to another's negligence). The lien attaches to the patient's personal injury cause of action as well as to any corresponding judgment or proceeds of settlement. *Id.* § 55.003(a)(1)–(3) (stating that lien attaches to cause of action for damages arising from injury, judgment, and settlement proceeds). The purpose of the statute is to provide hospitals "an additional method of securing payment from accident victims, encouraging their prompt and adequate treatment." *In re N. Cypress Med. Ctr. Operating Co., Ltd.*, 559 S.W.3d 128, 131 (Tex. 2018).

Because a hospital has "neither tort nor contract rights against a tortfeasor who has injured a patient, the only support for a hospital lien is its claim for reimbursement from the patient." *Norvil*, 580 S.W.3d at 286 (quoting *Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007)). Thus, "[a] lien against a patient's tort recovery is a claim against the patient." *Id.* (quoting *Linnstaedter*, 226 S.W.3d at 411). We therefore conclude that the Patients, who are the Providers' actual customers, are members of the hospital liens' intended audience. *See id.*; *see also Schmidt v. Crawford*, 584 S.W.3d 640, 654 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (differentiating hospital liens

16

from speech at issue in that case, because hospital lien statute "necessarily makes the injured person a member of the hospital lien's intended audience in order to effectuate its purpose, which is to ensure that the hospital gets paid from any funds that [the patient] may recover from the third party who allegedly made her medical treatment necessary").

Accordingly, we hold that the Providers' hospital liens are commercial speech exempt from the TCPA's dismissal procedures, and as such, cannot support dismissal of the Patients' fraudulent lien claims.

We sustain the Patients' first issue.

### Cross-Appeal of TCPA Attorney's Fees and Sanctions

The Providers' cross-appeal challenges the amount of attorney's fees and sanctions awarded to them for defending the nine consolidated fraudulent lien suits in the Sanders case that the trial court dismissed pursuant to the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a). Because in sustaining the Patients' first issue we must reverse the trial court's final judgment, including its award of attorney's fees, costs, and sanctions, we dismiss the Providers' cross-appeal as moot.

### Conclusion

We reverse the trial court's final judgment dismissing Rosemary Ejiofor's case filed as next friend of Destiny Ejiofor and awarding attorney's fees and

17

sanctions, and we remand the case to the trial court for further proceedings consistent with this opinion.

Likewise, we reverse the trial court's final judgment dismissing the consolidated cases filed by Karen Sanders, Theodore Chase, Kevin Pever, Hassan Gebara, Lindsey Villanueva, Tamisha Shelton, Kenneth Williams, Timisha Kimble, and Rosemary Ejiofor (in her own right) and awarding attorney's fees and sanctions, and we remand the cases to the trial court for further proceedings consistent with this opinion.

We dismiss the Providers' cross-appeal as moot.


                                      Evelyn V. Keyes
                                        Justice


Panel consists of Chief Justice Radack and Justices Keyes and Goodman.