

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN RE: | § | No. 08-20-00070-CV |
| WILLIAM VAN HASELEN III, | § | AN ORIGINAL PROCEEDING |
| Relator. | § | IN MANDAMUS |

## **O P I N I O N**

This discovery mandamus proceeding challenges a trial court's order requiring a party to submit their personal income tax returns to a neutral, third-party certified public accountant (CPA) for review, for the sole purpose of assisting the trial court in its determination of the tax returns' ultimate discoverability.

Based on the record before us, we deny mandamus relief.

## I. BACKGROUND

The underlying lawsuit, originally filed in 2014, involves direct and derivative claims by a minority stakeholder, Real Party in Interest Tommy Lewis, against various entities owned or controlled by Relator William Van Haselen III ("Van Haselen"). Specifically, Lewis is a limited partner of Purplehawk, LP and a member of Anahawk, LLC. He alleges that funds were siphoned from those two entities into four other entities (SOVA, LLC, James Watt Project, LLC, VH Development, and East Placitas, LLC) in a "shell game" that ultimately funneled funds to Van

Haselen to the detriment of the minority shareholders. Lewis named Van Haselen and all these entities in a suit that alleges a number of extra-contractual theories.

The parties engaged in extensive discovery that ultimately resulted in the production of the general ledgers for four of the entities, along with their corporate tax returns, bank records, profit and loss statements, balance sheets, and passwords for electronic accounting data. The digital version of the general ledger for SOVA was withheld in discovery, and Van Haselen testified that he no longer had any records for VH Development. At issue here is Lewis's Motion to Compel (filed May 13, 2019) that would require Van Haselen to produce his personal income tax returns for the years 2005 to 2016. Among other items, the motion to compel also sought production of an electronic version of the general ledger for SOVA. All the parties agree SOVA is a central clearinghouse for fund transfers between the several entities. In support of the motion, Lewis through an affidavit dated April 9, 2019, contended that the paper version of SOVA's general ledger as previously received was incomplete and illegible.

At an August 16, 2019 hearing on the motion to compel, counsel for both sides engaged in a lengthy discussion and argument over their differing interpretations of the financial records that had been produced and Lewis's claimed need for additional discovery, specifically including the electronic SOVA ledger and Van Haselen's tax returns. Van Haselen contended at the hearing that he had produced additional documents after the time that the motion to compel (with its supporting affidavit) was filed which mooted Lewis's criticism of the prior production responses. And specifically, he contended that with the production of the general ledgers of all the respective entities, Lewis would have a complete record of all the receipts and disbursements germane to the case.[1] Conversely, Lewis argued that funds flow from all the entities through SOVA back to Van

---

[1] Van Haselen's accountant provided this description of a general ledger in the hearing below:

2

Haselen as their majority shareholder, which in turn would be shown on Van Haselen's tax returns.[2]

Addressing the tax return issue, the trial court stated that the issues before it involved complex accounting questions and repeatedly acknowledged that an appropriate analysis of the potential relevance of information in the tax returns would require accounting expertise beyond its own. The judge explained that his standard practice in such situations was to enlist the assistance of a court-appointed, neutral, third-party expert accountant. And in keeping with its typical

---

[Witness]: A general ledger is basically a ledger where all transactions are recorded -- all income and expenses, all assets and liabilities in detail.

Q. In, for example, Purplehawk, which was the initial thrust of this lawsuit, is every single check going back to 2008 documented in those ledgers?

A. Everything is in the ledger, yes.

Q. Okay. So even if they are claiming over here that there is missing checks, every single check is there, the amount, the date, and the purpose of it?

A. Absolutely, yes.

The accountant acknowledged, however, that he had not verified each entry in the general ledgers.

[2] Van Haselen's accountant also testified:

[Witness]: Well, if you are familiar with how partnerships work, it's a conduit, it's a flow-through. So whatever the company makes, it's reported on a 1065, and then each partner gets a K-1 that is reported on the individual's 1040.

Q. But SOVA doesn't do K-1s; right?

A. I believe -- I am not exactly sure, but . . .
. . . .
Q. And how is [SOVA] set up for tax purposes?

A. Schedule C.

Q. Schedule C is sole proprietorship?

A. Yes.

Q. Okay. So as a sole proprietor, everything runs through SOVA through Mr. Van Haselen's personal tax account?

A. Yes.

procedure, the trial court decided to appoint a neutral CPA to review the tax returns alongside the pleadings and evidence in the case, and to hear a 20- or 30-minute argument from each side. The CPA would then report to the trial court on whether any portions of the tax returns appeared to have potential relevance to the lawsuit. Then, taking the CPA's report into consideration, the trial court would make a ruling on the discoverability of the tax returns.[3] The judge explicitly stated that the CPA would be under a duty not to disclose any of the information in the tax returns to anyone other than the trial court.[4]

After the hearing, the trial court signed an order stating, in relevant part:[5]

> The tax returns of WILLIAM VAN HASELEN, III and TOMMY LEWIS from 2008 to present shall be produced to an independent neutral Certified Public Accountant (CPA). The CPA will be chosen by an agreement of counsel for the parties. … The parties will then have twenty (30) [sic] minutes each to present and explain to the CPA why the [t]ax returns are relevant or are not relevant to the underlying causes of action and defenses. In doing so, the CPA shall have access to the pleadings submitted in these proceedings, written arguments produced by counsel, and evidence produced by either [p]arty to the other during the course of these proceedings. Upon presentation of counsel['s] arguments to the CPA, the Court will set a practicable deadline for the CPA's written report, in which the CPA will inform the Court as to what information in the tax returns is or could be relevant to the facts of the case. Based on the CPA[']s report, the Court will make a final Order as to whether WILLIAM VAN HASELEN, III and/or TOMMY LEWIS should produce to the other side his tax returns or any portion thereof.

Van Haselen then filed this writ of mandamus contending that the trial judge abused its discretion in ordering Van Haselen to submit his tax returns to the CPA, on grounds that Lewis

---

[3] The trial court also explained that Lewis's tax returns, which were requested by Van Haselen, would be treated in the same manner.

[4] Although the trial court's order does not expressly prohibit the CPA from disclosing information contained in the returns, it is unquestionably clear from the hearing transcript that this was the judge's intent.

[5] The order also compels production of several other records requested by Lewis, including SOVA's general ledger in electronic format. Van Haselen's complaints in this mandamus proceeding are limited to the portion of the trial court's order pertaining to the income tax returns.

4

failed to establish that the information contained in the tax returns is relevant and cannot be obtained from another source. From the briefing, we discern that Van Haselen obtained a stay of the underlying proceedings from the trial court pending resolution of this mandamus.

## II. STANDARD OF REVIEW

Mandamus is an extraordinary remedy. *In re Prudential Ins. Co. of America*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding). To obtain mandamus relief, a relator must show that (1) a trial court has clearly abused its discretion, and (2) the relator has no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding).

A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, or if it clearly fails to analyze or apply the law correctly. *Id.* at 840; *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding) (per curiam); *In re ReadyOne Industries, Inc.*, 394 S.W.3d 697, 700 (Tex.App.--El Paso 2012, orig. proceeding). "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We also explain the standard this way: The question is whether the trial court acted without reference to any guiding rules and principles. *Id.*

Germane here, those guiding rules and principles are found in our discovery rules, and a trial court abuses its discretion by ordering discovery that exceeds that permitted by the rules of procedure. *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding) (per curiam). "In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party." TEX.R.CIV.P. 192.3.

5

Evidence is "relevant" if "it has any tendency to make a fact [of consequence to the action] more or less probable than it would be without the evidence[.]" TEX.R.EVID. 401; *In re N. Cypress Med. Ctr. Operating Co., Ltd.*, 559 S.W.3d 128, 131 (Tex. 2018) (orig. proceeding). Moreover, relevance for purposes of discovery is broader than relevance under the Texas Rules of Evidence. *In re N. Cypress*, 559 S.W.3d at 131 (holding that it is not a ground for objection that the information sought will be inadmissible at trial if the information sought "appears reasonably calculated to lead to the discovery of admissible evidence"). The phrase "relevant to the subject matter" is "liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial." *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009). However, while the scope of discovery is generally within the trial court's discretion, the trial court must make efforts to impose reasonable discovery limits. *In re CSX Corp.*, 124 S.W.3d at 152; *In re American Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding).

The second burden on the relator is to show the lack of an adequate remedy by appeal. *Walker*, 827 S.W.2d at 843. If a discovery order compels production of "patently irrelevant or duplicative documents," there is no adequate remedy by appeal if the order "clearly constitutes harassment or imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party." *Id.*; *see also In re CSX Corp.*, 124 S.W.3d at 153.

### III. APPLICABLE LAW

Information contained in income tax returns is discoverable if it is relevant, material, and not duplicative. *Maresca v. Marks*, 362 S.W.2d 299, 300 (Tex. 1962) (orig. proceeding), *citing Crane v. Tunks*, 328 S.W.2d 434, 440 (Tex. 1959), *disapproved in part on other grounds by Walker,* 827 S.W.2d at 842.[6] In such situations, "the pursuit of justice between litigants

---

[6] *Walker v. Packer* disapproved of *Crane* to the extent it implies that remedy by appeal is inadequate merely because it might involve more delay or cost than mandamus. *Walker*, 827 S.W.2d at 842. But inadequacy of remedy by appeal

outweighs protection of their privacy." *Id.* at 301. But "scrupulous limitation of discovery" is required in this regard, as only information that is relevant and material to the matters in controversy constitutes information "furthering justice between the parties[.]" *Id.* "[U]ncontrolled and unnecessary" discovery of income tax returns is not permitted. *Hall v. Lawlis*, 907 S.W.2d 493, 495 (Tex. 1995)(orig. proceeding)(per curiam), *quoting Sears, Roebuck & Co. v. Ramirez*, 824 S.W.2d 558, 559 (Tex. 1992) (orig. proceeding) (per curiam).

Although a party resisting discovery generally bears the burden of showing that the information sought is not discoverable, when a party objects to the production of its tax returns, the burden falls upon the requesting party to show that the returns are relevant and material to the issues in the case, and that such information cannot be obtained from any other source. *Ramirez*, 824 S.W.2d at 559; *Maresca*, 362 S.W.2d at 301; *In re Brewer Leasing, Inc.*, 255 S.W.3d 708, 713-14 (Tex.App.--Houston [1st Dist.] 2008, orig. proceeding).

It is incumbent upon a trial court to "examine the income tax return and to separate the relevant and material parts from the irrelevant and immaterial parts," and these determinations are soundly within the trial court's discretion. *Maresca*, 362 S.W.2d at 300, 301; *Crane*, 328 S.W.2d at 440. A trial court abuses its discretion if it fails to safeguard irrelevant and immaterial portions of income tax returns from discovery, and in such circumstances a party has a right to mandamus relief. *Maresca*, 362 S.W.2d at 301. However, a reviewing court "cannot by writ of mandamus supervise the exercise of discretion by a trial judge in his rulings on the relevancy and materiality of information contained in income tax returns." *Id.* Mandamus will only lie "when no discretion has been exercised, *i.e.*, when the order of the trial judge does not separate for protection against

from forced production of irrelevant tax records derives not just from relative cost or delay, but from invasion of litigant's privacy. *See Tilton v. Marshall*, 925 S.W.2d 672, 683 n.10 (Tex. 1996) (orig. proceeding).

7

discovery those portions of income tax returns plainly irrelevant and immaterial to the matters in controversy." *Id.*

## IV. DISCUSSION

We conclude that the trial court did not abuse its discretion in directing Van Haselen to submit his income tax returns to a neutral third-party CPA to assist the trial court in its ultimate discoverability decision. The trial court has not yet made a ruling on whether the tax returns are discoverable. It is apparent from the record and from the order itself that the trial court determined it required expert assistance to make its ruling, and that it expects the CPA to assist it in evaluating whether any portions of the tax returns may be relevant or material to the lawsuit. The trial court made clear that it would not order production of irrelevant portions of the tax returns. We find no indication of an abuse of discretion in the trial court's decision to seek an expert's help in an area where the trial court does not have expertise of its own.[7]

Nor do we believe that the trial court abused its discretion in its apparent conclusion that the evidence and arguments presented at the hearing were sufficient to establish that Van Haselen's tax returns could *potentially* contain information that may be relevant to Lewis's claims. Unlike in *Hall*, where the requesting party offered no explanation whatsoever as to how tax returns would be relevant to their claims and the court did not conduct a preliminary inspection of the returns before ordering their production, the testimony in this case indicates that Van Haselen's tax returns could potentially contain relevant information. *See Hall*, 907 S.W.2d at 494-95. The testimony established that SOVA was a "clearinghouse" entity, with funds often being transferred between

---

[7] The parties do not address, nor does the mandamus challenge *per se* a trial court's authority to seek expert assistance to resolve a discovery dispute. Courts have appointed special masters under the authority of TEX.R.CIV.P. 171. *See Simpson v. Canales*, 806 S.W.2d 802, 806 (Tex. 1991) (orig. proceeding) (explaining source and limits on authority to appoint discovery masters). As the issue has not been raised here, we express no opinion on the source or extent of a trial court's authority to enlist the aid of an outside expert to assist in resolving a discovery dispute.

SOVA and other Van Haselen entities, which Lewis has alleged to constitute fraudulent transactions. Van Haselen's CPA testified that, as a Schedule C entity, all of SOVA's information would appear on Van Haselen's personal tax returns.

Similarly, on the record before us, the information that may be contained in Van Haselen's tax returns is not necessarily duplicative. In *Ramirez*, the Texas Supreme Court found that compelling disclosure of an entity's tax returns as evidence of the entity's net worth was "unnecessarily duplicative," and thus a clear abuse of discretion, when the information sought was already available from audited and certified annual reports that the entity had already produced, accompanied by an uncontroverted affidavit confirming that the annual reports accurately reflected the entity's net worth. 824 S.W.2d at 559. In that case, the Texas Supreme Court held that there was "no justification for requiring Sears to produce the same information in different form." *Id.* In this case, however, the financial records produced by the defendants are not audited, not certified, and do not include any affidavit or other statement averring their accuracy. Instead, Van Haselen's CPA testified that he had not verified the correctness of the records, and the alleged inconsistencies and irregularities in the records are an integral part of Lewis's claims. Van Haselen argues that his additional production of information has answered Lewis's concerns over the records. And that may be true. But the trial court has done no more than enlist the aid of a qualified accountant to answer the question of whether the general ledgers of the involved entities (and the associated bank statements, balance sheets, tax returns etc.) provide a complete record of all the intercompany transfers, or whether Van Haselen's individual tax returns offer something more.[8]

---

[8] The trial court's order also ordered the production of an electronic version of SOVA's general ledger to meet Lewis's claim that previously produced hardcopy ledger is incomprehensible. Van Haselen does not challenge that portion of the order, and the parties' briefing indicates that the electronic general ledger has yet to be produced due to the stay of proceedings pending this mandamus. We presume that the electronic ledger will be produced, and that Lewis will have an adequate opportunity to review it before the parties present their respective arguments to the CPA. Accordingly, the parties will be able to further address the issue of whether the information in the tax returns may be obtained from another source at that time.

9

Armed with that opinion, we are confident that the trial court can determine whether the individual tax returns are sought as relevant information for the claims asserted, or, as Van Haselen fears, only for the purpose of embarrassment and invasion of his personal privacy. *See Kern v. Gleason*, 840 S.W.2d 730, 737 (Tex.App.--Amarillo 1992, orig. proceeding) (holding production of personal tax return of facility's owner was not permissible if the facility's records provide the same information--only if those records were "incomplete or fail to clearly show payments or transfers of assets" could the request for personal tax returns be renewed).

## V. Conclusion

After reviewing the entire mandamus record we find that the trial court did not abuse its discretion by enlisting the aid of an expert to assist in its evaluation of complicated accounting questions before making a ruling on discoverability. We therefore conclude that Van Haselen has failed to establish that he is entitled to mandamus relief.

The writ of mandamus is denied.

JEFF ALLEY, Justice

June 30, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.