

# NUMBER 13-20-00330-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RIO GRANDE REGIONAL HOSPITAL, INC.,
HCA HEALTH SERVICES OF TEXAS, INC.,
AND RESOURCE CORPORATION OF
AMERICA & RECOVERY OF TEXAS, LLC,                    Appellants,

v.

ESTHER AKINDAYOMI, ET AL.,                              Appellees.

## On appeal from the 464th District Court
## of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Tijerina

This permissive appeal and cross-appeal arise from the trial court's interlocutory

summary judgment order granting in part and denying in part a motion for summary

judgment filed by appellants and cross-appellees Rio Grande Regional Hospital, Inc.,

which owns and operates Rio Grande Regional Hospital in McAllen, Texas, (the Hospital), HCA Health Services of Texas, Inc.[1], and Resource Corporation of America & Recovery of Texas, LLC (RCA)[2] (collectively, RGR) and denying appellees' and cross-appellants Esther Akindayomi, et al. (collectively, the Patients) motion for summary judgment.[3] The Patients filed a suit for damages against RGR for, among other causes of action, fraudulent liens pursuant to Chapter 12 of the Texas Civil and Practices Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(a). After granting in part and denying in part RGR's motion for summary judgment and granting in part and denying in part the Patients' motion for summary judgment, the trial court granted both sides permission to appeal. Subsequently, this Court granted the parties' joint motion for permissive appeal to answer the questions as ordered by the trial court as follows:

1. Does Texas Property Code Chapter 55 require inpatient admission as a prerequisite for a hospital lien?

2. Does the fact that the lien notices at issue state that they were for the "reasonable value" of the hospital's services and did not state a lien amount preclude a [Chapter 12 fraudulent] claim . . . by seeking to cover an amount in excess of what Chapter 55 allows?

3. Did the lien notices substantially comply with the requirements of

---

[1] According to RGR, HCA Health Services has denied the Patients' allegation that it owns or operates the Hospital and "has pleaded that HCA Health Services is not a proper party to the case."

[2] RGR states in its brief that "Resource Corporation of America & Recovery of Texas, LLC . . . provides lien and other services for the Hospital."

[3] The Patients are Akindayomi, Deyanira Arango, Guadalupe Armstrong, Michael B. Bass, Maria De Mora Betancourt, San Juanita Cadena, Maura Cardenas, Elisa Castro, Diana Cavazos, Raquel Cerda, Silvia Conlan, Silvia Cook, Irma Cruz, Manuel Enriquez, Alejandra Vasquez Espinoza, Irma Flores, Joanne Flores, Maria Del Carmen Gonzalez, Maria Guajardo, Alex Guillen, Cesar Guzman, Maria Guadalupe Guzman, Esthela Hernandez, Lyzbeth Leon, Lyzbeth Leon, Mario Martinez, Mario Martinez, Andrameda Mendoza, Ana Moniet, Raul Montalvo Jr., Raul Montalvo Jr., Graciela Perez, Graciela Perez, Ramon Perez, Alejandra Reyes, Claudio Rodriguez, Gloria Rodriguez, Maria Rodriguez, Valdemar Rodriguez, Ramona Ruiz, Jose Luis Ruvalcaba, Lorena Ruvalcaba, Micheal Saldana, Mario Salinas, Lorenzo Silvestre-Zavala, Marco Sosa, Irene Suarez, Sylvina Villarreal, Hector Yado, and Jose Zubieta.

Chapter 55 even though the name of the lienholder is erroneous? By three issues, RGR contends that (1) Chapter 12 of the Texas Property Code "requires proof that the lien at issue is fraudulent"; (2) the lien notices complied with Chapter 55 as a matter of law and were not therefore fraudulent; and (3) the trial court improperly found that a question of fact exists concerning whether the lien notices were fraudulent because they stated that the Hospital sought the reasonable value of its services.

By two cross-issues, the Patients contend that Chapter 55 as applied to them is unconstitutional and that the challenged liens "are invalid as a matter of law since the liens do not name Rio Grande Regional Hospital, Inc., the lien claimant, and therefore are not in substantial compliance with the mandatory requirements of Chapter 55 . . . ." We affirm in part and reverse and render in part and remand.

## I.     PERTINENT FACTS

The Patients were treated in the Hospital's emergency room for injuries sustained in accidents on various dates from 2013 to 2015.[4] Once treated, the Patients were released from the emergency room. It is undisputed that the Patients were not given a Hospital room and were not designated inpatients or provided inpatient care. According to the Patients, RCA on behalf of the Hospital filed notices of hospital liens pursuant to Texas Property Code Chapter 55 for the treatment they received in the Hospital's emergency room. *See* TEX. PROP. CODE ANN. § 55.0015.

The lien notices state the following:

NOTICE is HEREBY GIVEN pursuant to Section 55.005 of the Property Code that the Undersigned Claimant [the Hospital], whose address is 101

---

[4] According to RGR, one patient claims that he was treated in 2009.

3

E. RIDGE RD Mc[A]llen[,] TX 78503, and who claims as a hospital has performed hospital services for [patient's name listed here], Patient whose address is [patient's address listed here] and whose place of domicile is the same, which hospital services were rendered necessary to said Patient as a result of an Injury, which occurred at the following place . . . through the fault of: Unknown to Claimant, Tortfeasor, whose address is; Unknown to Claimant.

The Claimant [the Hospital] claims a hospital lien for the reasonable value of Claimant's said hospital services which were rendered necessary by the following described said injury to said Patient, to wit: Patient was involved in an accident and received medical treatment.[5]

The Patients sued RGR for, among other things, filing a fraudulent lien pursuant to Chapter 12 of the civil practice and remedies code arguing that the liens do not comply with Chapter 55 of the property code for the following reasons: (1) the Patients were not admitted as inpatients and were merely treated in the emergency room; (2) the liens sought more than a reasonable and regular rate for the services provided; and (3) the notices improperly listed the claimant as Rio Grande Regional Medical Center.[6] RGR

---

[5] Each notice states exactly the same as shown above, except that each patient's name, address, and account number is different.

[6] Chapter 12 states:

    (a)    A person may not make, present, or use a document or other record with:

        (1)    knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

        (2)    intent that the document or other record be given the same legal effect as a court record or document of a court . . . , evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

        (3)    intent to cause another person to suffer:

            (A)    physical injury;

moved for traditional summary judgment in two motions arguing that the liens were valid pursuant to Chapter 55 because (1) treatment in a hospital's emergency department even without inpatient admission is sufficient to allow a lien, (2) the liens "did not seek to cover amounts in excess of the alleged limits in Chapter 55" as the lien notices merely sought an amount of the reasonable value for the services provided, and (3) the misnomer of the Hospital's name in the notices does not render the liens invalid.

The Patients filed responses to the Hospital's motions for summary judgment, and they also cross-moved for summary judgment on the issue of misnomer. The trial court granted in part and denied in part the Hospital's first motion for summary judgment holding that inpatient admission is not required for a valid lien. The trial court denied the motion on the Hospital's claim that the liens were not excessive. The trial court granted the Hospital's second motion for summary judgment concluding that although there is a misnomer in the notices, the notices substantially complied with Chapter 55. Consistent with its conclusion that a misnomer does not invalidate the lien notices, the trial court denied the Patients' motion for summary judgment.

The trial court signed an amended summary judgment order consolidating the three separate orders into one. RGR requested a permissive appeal of the trial court's denial of its motion for summary judgment on the issue of excessive charges, and the Patients sought permission to appeal the trial court's determination that inpatient

---

    (B)  financial injury; or

    (C)  mental anguish or emotional distress.

TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(a).

admission is not required under Chapter 55 and that the misnomer in the notices did not invalidate the liens. We granted this permissive appeal to determine those issues.

## II.     "ADMITTED TO A HOSPITAL"

By their first cross-issue, the Patients argue that the trial court improperly concluded that a hospital is entitled to a lien on a patient's third-party personal injury recovery when the patient has not received inpatient care. The Patients argue that the trial court's interpretation of the phrase "admitted to the hospital" was erroneous because the only correct interpretation of the phrase is that the Patients were provided inpatient treatment and not merely emergency room treatment. The Patients state that we must not rely on § 55.0015, enacted by the Legislature in 2019, because it retroactively changed § 55.002(a)—the only statute that the Patients claim applies to their cause of action. RGR responds that § 55.002(a) does not require inpatient admission, and "[i]n enacting [§] 55.0015, the Legislature did not change the law; it merely clarified it."

The primary purpose in construing statutes is to give effect to legislative intent. *BCCA Appeal Group, Inc. v. City of Hous.*, 496 S.W.3d 1, 8 (Tex. 2016). "We initially look to the plain meaning of the text as the sole expression of legislative intent, 'unless the Legislature has supplied a different meaning by definition, a different meaning is apparent from the context, or applying the plain meaning would lead to absurd results.'" *Id.* (citing *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46 (Tex. 2015)). We must view the whole statute and not look to a specific provision in isolation. *Kilgore Indep. Sch. Dist. v. Axberg*, 572 S.W.3d 244, 257 (Tex. App.—Texarkana 2019, pet. denied) (citing *MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 499 (Tex. 2010); *McIntyre v. Ramirez*, 109 S.W.3d

6

741, 745 (Tex. 2003)).

> When a statutory term is undefined, we will not find "a meaning that is out of harmony or inconsistent with other provisions in the statute." Instead, "we look to the meaning of the words used, or of a particular clause, within the context of the statute" and "study the language of the specific provision at issue, within the context of the statute as a whole, endeavoring to give effect to every word, clause, and sentence."

*State Farm Mut. Auto. Ins. Co. v. Rumbaugh*, No. 06-21-00065-CV, __ S.W.3d __, __, 2022 WL 452280, at *3 (Tex. App.—Texarkana Feb. 15, 2022, no pet. h.) (internal citations omitted); *see Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978).

Section 55.002(a) states that "[a] hospital has a lien on a cause of action or claim of an individual who receives hospital services for injuries caused by an accident that is attributed to the negligence of another person." TEX. PROP. CODE ANN. § 55.002(a). A patient "must be *admitted to a hospital* not later than 72 hours after the accident" for the lien to attach. *Id.* (Emphasis added). The Patients argue that when the Legislature enacted § 55.002(a), it meant to say that for a lien to attach, the individual must be admitted as *an inpatient* to a hospital not later than seventy-two hours after the accident. The Patients further argue that we must not consider § 55.0015 in our decision because it is unconstitutionally retroactive.

The Legislature enacted § 55.0015, titled, "Admission to Hospital," in 2019. Section 55.0015 expressly provides that "for purposes of . . . chapter [55], an injured individual is considered admitted to a hospital if the individual is allowed access to any department of the hospital for the provision of any treatment, care, or service to the individual." *Id.* § 55.0015.[7] Our sister court has recently likewise determined that impatient care is not

---

[7] We note that the Legislature stated in its notes of the enacting legislation that its purpose in

7

required for a hospital lien to attach. *See Tex. Health Harris Methodist Hosp. Fort Worth v. Featherly*, No. 02-19-00199-CV, 2022 WL 1117449, at *14 (Tex. App.—Fort Worth Apr. 14, 2022, no pet. h.) (mem. op.). In that case, the court of appeals concluded that "[b]ased on the term's [(admitted)] common meaning," that because the patient "was allowed entry and access to the Hospital's emergency room for treatment, [the patient] was 'admitted' to the Hospital for purposes of the hospital lien statute." *Id.* This reasoning is persuasive and further supports our conclusion that admitted as used in the statute does not prohibit the Hospital from acquiring a lien when the patient only visits the emergency room.

Accordingly, because § 55.002(a) does not limit "admitted to a hospital" to inpatient admission and § 55.0015 clarifies that "admitted to a hospital" means admitted to *any* department in a hospital, we cannot conclude as the Patients argue that the liens are invalid because the Patients were not admitted for inpatient care. Therefore, to the first question: "Does Texas Property Code Chapter 55 require inpatient admission as a prerequisite for a hospital lien," we answer, "No." We overrule the Patient's first issue.[8]

---

enacting § 55.0015 was to clarify § 55.002(a)'s "admitted to a hospital" language. *See* HOSPITAL LIENS, 2019 Tex. Sess. Law Serv. Ch. 862, Sec. 3 (H.B. 2929) ("The addition by this Act of Section 55.0015, Property Code, is intended to clarify rather than change the existing law."). In addition, the bill analysis of the amendment states:

> [Section 55.0015] amends the Property Code to clarify that, for the purposes of statutory provisions relating to hospital and emergency medical services liens, an injured individual is considered admitted to a hospital if the individual is allowed access to any department of the hospital for the provision of any treatment, care, or service to the individual.

Bill Analysis, Tex. H.B. 2929, 86th Leg., R.S. (2019), https://lrl.texas.gov/scanned/TLCBillAnalyses/86-0/HB2929RPT.PDF. In addition, the bill analysis further explains that § 55.0015 was enacted "to address" any "lack of clarity" caused by "unexpected legal challenges" to hospitals. *Id.* However, these extrinsic aids are not required in our analysis because the statute is not ambiguous. *See Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 135 (Tex. 2018) ("[W]e do not rely on such extrinsic aids to construe unambiguous statutory language.").

[8] As a sub-issue to their first issue in their cross-appeal, the Patients challenge the constitutionality of § 55.0015 of the property code. *See* TEX. PROP. CODE ANN. § 55.0015 (stating that "for purposes

## IV.    REASONABLE VALUE

By its sole issue, RGR contends that the notices were not fraudulent because they stated that "they were for the 'reasonable value' of the hospital's services." The Patients respond that (1) the liens need not be fraudulent for them to make a Chapter 12 claim, and (2) there are genuine disputed issues of material fact regarding whether the liens are fraudulent because RGR intended to collect more than the reasonable value of the services provided. As to their second argument, the Patients claim that RGR referenced the Patients' bill account numbers in the lien notices and those bills listed excessive amounts for the services provided by the Hospital, which shows RGR's intent to cause the Patients financial injury.

RGR moved for summary judgment on the basis that, as a matter of law, the lien notices were not fraudulent because they did not state an amount and did not purport to cover an amount in excess of the limits imposed by Chapter 55; therefore, according to RGR, the Patients' fraudulent lien claims pursuant to Chapter 12 were barred.[9]

> [Section 55.002] provides hospitals an additional method of securing payment from accident victims, encouraging their prompt and adequate treatment. Subject to certain conditions, a hospital has a lien on the cause

of . . . chapter [55], an injured individual is considered admitted to a hospital if the individual is allowed access to any department of the hospital for the provision of any treatment, care, or service to the individual"). Specifically, the Patients argue, among other things, that the Legislature's "amending Chapter 55 of the Texas Property Code violates Art[icle] I, [§] 16 of the Texas Constitution" because the amendment retroactively extinguishes the Patients' pending and accrued claims. However, because we have concluded that § 55.002(a) does not limit "admitted to a hospital" to inpatient admission and that § 55.0015 merely clarifies that "admitted to a hospital" means admitted to any department in a hospital, the Patients' argument that § 55.0015 as applied to them is impermissibly retroactive is meritless. We overrule this issue.

[9] As the movant, RGR bore the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). Thus, to be entitled to summary judgment, RGR must have conclusively negated at least one essential element of the Patients' Chapter 12 cause of or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

of action of a patient "who receives hospital services for injuries caused by an accident that is attributed to the negligence of another person." The lien also attaches to the proceeds of a settlement of the patient's cause of action. We have noted that the statute "is replete with language that the hospital recover the full amount of its lien, subject only to the right to question the reasonableness of the charges comprising the lien."

*In re N. Cypress Med. Ctr. Operating Co., Ltd.*, 559 S.W.3d 128, 131 (Tex. 2018) (internal citations omitted). Moreover, "a valid hospital lien may not secure charges that exceed a reasonable and regular rate."[10] *Id.* at 133.

On appeal, the Patients appear to concede that the lien notices themselves were not fraudulent stating that the trial court correctly declined to determine that a lien must be invalid or fraudulent before a Chapter 12 lien is meritorious and "A *valid* lien notice can support a Chapter 12 claim." (Emphasis added).

Chapter 12.002(a) states:

A person may not make, present, or use a document or other record with:

(1)  knowledge that the document or other record is a fraudulent court record or *a fraudulent lien* or claim against real or personal property or an interest in real or personal property.

---

[10] In its motion for summary judgment, RGR disputed that a hospital lien is limited to "reasonable and regular" charges stating: "Because [RGR is] entitled to summary judgment regardless of whether the 'reasonable and regular rate' requirement applies, the [trial c]ourt need not resolve that issue to dispose of this motion." On appeal, RGR does not make this argument, and the trial court did not give RGR permission to ask such a question.

Nonetheless, we note that former "[a]rticle 55.06a provide[d] that a hospital furnishing care and treatment for the injuries one received as a result of the negligence of another is entitled to a lien on the injured person's cause of action against the negligent person, or the proceeds therefrom, to secure the payment of the hospital's bill for such treatment, "provided such hospital . . . does not charge more than a reasonable and regular rate for such services . . . ." *See Dallas Cnty. Hosp. Dist. v. Perrin*, 694 S.W.2d 257, 260 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (citing Hospital Lien Act, ch. 769, § 1, 1971 Tex. Gen. Laws 2420, *amended by* Act of August 31, 1981, ch. 359, § 1, 1981 Tex. Gen. Laws 953, repealed by Act of January 1, 1984, ch. 576, § 6, 1983 Tex. Gen. Laws 3475, 3729–30); *see also In re N. Cypress Med. Ctr. Operating Co., Ltd.*, 559 S.W.3d 128, 133 (Tex. 2018); *see also Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007) ("The lien amount cannot be more than 'a reasonable and regular rate.'" (citing TEX. PROP. CODE ANN. § 55.004(d) ("A hospital lien described by Section 55.002(a) does not cover . . . charges for other services that exceed a reasonable and regular rate for the services"))).

TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(a) (emphasis added). The plain language of the statute states that a Chapter 12 claim requires that a defendant know that the document or other record is a "fraudulent lien." *See id.* Accordingly, we reject the Patients' argument that they may make a Chapter 12 claim even when the lien is not fraudulent. *See id.*

Next, the Patients argue that RGR's inclusion of the Patients' account numbers creates a question of fact regarding whether RGR truly intended to collect the reasonable value of their services. The Patients allege that the amounts listed on their bills were excessive and not for the reasonable value of the services they received from the Hospital and that because the account numbers are listed on the lien notices, the bills are "anchored in" the liens. In addition, the trial court stated in its findings of fact that it had determined that because the liens include the account numbers of the Patients' bills, those bills were anchored in the liens.

The complained-of notices in this case state that the Hospital was seeking a hospital lien for the "reasonable value of [the Hospital's] . . . services."[11] At the bottom of the notices, the word "Account:" is written and then each individual patient's account number is listed (redacted) as shown below.

---

[11] As the parties do not dispute on appeal that a hospital lien may not be for an amount that is more than "a reasonable and regular rate," we will not address that issue. *See Daughters of Charity Health Services of Waco*, 226 S.W.3d at 411.

11

On oath being first duly sworn, deposes and says: That the undersigned person ████████ is the agent, the above-named Claimant; that he has read the foregoing claim, knows the contents thereof, and believes the same to be just and the facts therein stated are true.

Signed and sworn to before me this the ___ day of _____, 20 ___

Account: ████████                                    ████████
                                                      Agent

The lien notices merely state that the Hospital seeks "the reasonable value" of its "services which were rendered necessary." And although the account numbers appear on the lien notices, the Patients' bills are not mentioned or incorporated by reference, and there is no evidence that the bills were attached to the lien notices. There is no mention of the amount that the Hospital charged in the Patients' bills, and there is nothing on the lien notices which would alert a person to charges that are not reasonable or that are excessive. Accordingly, we cannot conclude that a question of fact exists regarding whether the lien notices show that RGR sought excessive damages precluding summary judgment. Therefore, we answer, "Yes" to the second question:

> Does the fact that the lien notices at issue state that they were for the "reasonable value" of the hospital's services and did not state a lien amount preclude a [Chapter 12 fraudulent] claim . . . by seeking to cover an amount in excess of what Chapter 55 allows?

We sustain RGR's sole issue.

## V.    MISNOMER

By their second cross-issue, the Patients contend that the lien notices did not substantially comply with the requirements of Chapter 55 because the name of the lienholder is erroneous on all notices. Specifically, the Patients argue that the lien notices are unenforceable and invalid as a matter of law because they state that the lienholder is the nonexistent Rio Grande Regional *Medical Center* opposed to Rio Grande Regional

12

*Hospital.*

A lien notice "must contain" the following: "(1) the injured individual's name and address"; "(2) the date of the accident"; "(3) the name and location of the hospital or emergency medical services provider claiming the lien"; and "(4) the name of the person alleged to be liable for damages arising from the injury, if known." TEX. PROP. CODE ANN. § 55.005(b). A hospital lien is created by statute. *See id.* § 55.005. Therefore, substantial compliance with the statutory requirements is mandatory. *See Gary E. Patterson & Associates, P.C. v. Holub*, 264 S.W.3d 180, 193 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Citicorp Real Estate, Inc. v. Banque Arabe Internationale D'Investissement*, 747 S.W.2d 926, 929 (Tex. App.—Dallas 1988, writ denied) ("[S]ince a judgment lien is statutorily created, substantial compliance with the statutory requirements is mandatory before a judgment creditor's lien will attach" (citing *Reynolds v. Kessler*, 669 S.W.2d 801, 804–05 (Tex. App.—El Paso 1984, no writ))). In the case of a creditor lien, a minor deficiency in a required element does not negate substantial compliance. *Id.* at 193–94. "[S]ubstantial compliance with a statute means compliance with its essential requirements." *BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 82 (Tex. 2017) (quoting *Edwards Aquifer Auth. v. Chem. Lime, Ltd.*, 291 S.W.3d 392, 403 (Tex. 2009)).

In *Methodist Hosps. of Dallas v. Mid-Century Ins. Co. of Tex.*, a hospital lien incorrectly stated the date of the accident, listed the injured person as both the injured and the liable party, and included the incorrect amount of the lien. 259 S.W.3d 358, 359–60 (Tex. App.—Dallas 2008, no pet.). Methodist Hospital filed suit against the liable

13

person's insurance and the attorney who represented the injured person because the insurance company disbursed the insurance settlement proceeds to the injured party and her attorney. *Id.* at 359. The trial court granted the insurance company's motion for summary judgment concluding that the lien notice did not substantially comply with § 55.005(b). *Id.*

Methodist argued on appeal that its notice substantially complied with § 55.005(b). *Id.* The court of appeals concluded that "[t]aken together, the errors made by Methodist in its notice of lien render the lien unenforceable." *Id.* The *Methodist* court stated that "the date of the accident is a critical component of the notice" and "crucial" because the lien only attaches to "the accident giving rise to the injuries treated by the hospital." *Id.* at 361. The court stated, "It is by comparing the date and the name of the responsible party, if known, that one can determine whether the accident made the subject of the legal claims is the same as the accident made the subject of the lien" and the notice at issue contained nothing "that would enable someone searching the record to determine that the lien was intended to attach to the accident occurring on [a different] earlier date" than the date listed on the lien. *Id.* As to incorrectly naming the injured person as the liable party, the *Methodist* court said, that although the actual name of the liable party is necessary only if known, because Methodist provided a name in the lien notices, "it was incumbent upon Methodist to name the correct party" and that "by naming [the injured person] as the liable party, the notice of lien appears unenforceable on its face." *Id.*

The *Methodist* court further explained that "[a] hospital can impose a lien only on a cause of action or claim that an individual has for injuries 'caused by an accident

14

attributed to the negligence of another person," but "[b]y naming [the injured person] as both the injured party and the liable party, the notice appears to negate the element that the accident was attributed to the negligence of another person." *Id.* Lastly, the *Methodist* court said that adopting "Methodist's argument . . . would vitiate the requirements of the statute." *Id.* The court concluded that the trial court properly ruled that Methodist's lien was unenforceable. *Id.*

The Patients rely on *Methodist* to support their argument that the lien notices do not substantially comply with the statute. However, this case is distinguishable from *Methodist.* Here, there is no claim that the lien notices contain an incorrect date for the accident. Thus, "a critical [and crucial] component of the notice" as found by the *Methodist* court did not appear incorrectly in the Hospital's lien notices. *See id.* at 361. In addition, the *Methodist* court's concern that a lien must allow the injured person to compare the date and the name of the responsible party, is not at issue here because the Hospital's lien notices would enable someone searching the record to determine that the lien was intended to attach to the accident occurring on the date listed on the liens. *Id.* Furthermore, the statute only requires that the liable party be named, if known. Finally, the *Methodist* court clarified that *taken together*, the set of incorrect information as listed above led to its conclusion that accepting the argument that Methodist's lien notices substantially complied with the statute would vitiate its requirements. *Id.*

Here, there is no evidence that the Hospital knew the identity of the liable party, and it stated in the lien notices that the liable party was unknown in compliance with the statute. TEX. PROP. CODE ANN. § 55.005(b); *Methodist*, 259 S.W.3d 358, 359–60. The

15

Hospital's notices did not name the injured person as the liable party; therefore, the lien notices do not appear unenforceable on their face. *See Methodist*, 259 S.W.3d 358, 359–60; *see also* TEX. PROP. CODE ANN. § 55.005(b). Additionally, the Hospital's lien notices did not include an incorrect amount to be collected as they stated the Hospital sought the reasonable value of the services provided in compliance with the statute. *See Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007) ("The lien amount cannot be more than 'a reasonable and regular rate.'" (citing TEX. PROP. CODE ANN. § 55.004(d) ("A hospital lien described by [§] 55.002(a) does not cover . . . charges for other services that exceed a reasonable and regular rate."))).

Equally important, the lien notices contained the Hospital's physical address, which would allow the Patients to determine where the services were provided. There is no evidence that any of the Patients were confused because the lien notice used the word "Medical Center" instead of "Hospital" or that they were unable to determine whether the liens were for the services provided to the Patients. Thus, *Methodist* is inapposite as none of the mistakes occurring in the lien in that case are present here. *See Methodist*, 259 S.W.3d 358, 359–60.

Therefore, we cannot conclude that merely stating that the lienholder was Rio Grande Regional *Medical Center* as opposed to Rio Grande Regional *Hospital* vitiates the statute's requirements. Because the lien notices substantially complied with all elements of the statute, we answer, "Yes" to the third question: "Did the lien notices substantially comply with the requirements of Chapter 55 even though the name of the lienholder is erroneous?" We overrule the Patients' second cross-issue.

## VI. CONCLUSION

Because we answered yes to question two, we reverse the portion of the trial court's judgment denying RGR's motion for summary judgment on the issue of reasonable value of services. Because we answered no to question one and yes to question three, we affirm the remainder of the trial court's summary judgment. *See id.* We render a judgment in favor of RGR and remand for further proceedings consistent with this memorandum opinion. *Houle v. Casillas*, 594 S.W.3d 524, 541–42 (Tex. App.—El Paso 2019, no pet.) ("When the trial court grants one summary judgment and denies the other, an appellate court may review both motions and render the judgment the trial court should have rendered." (citing *Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex. 1996))).

JAIME TIJERINA
Justice

Delivered and filed on the
21st day of July, 2022.

17