[1] Ante at 131 (quoting Tex. R. Civ. P. 192.3(a) ).
[2] Ante at 135.
[3] Ante at 135.
[4] Ante at 135.
[5] Ante at 135.
[6] Ante at 135.
[7] 532 S.W.3d 794, 812-813 (Tex. 2017) (orig. proceeding).
[8] Id. at 813.
[9] 356 S.W.3d 390, 391 (Tex. 2011).
[10] Id. at 393 & n.13.
[11] Id. at 393 ; Keith T. Peters, What Have We Here? The Need for Transparent Pricing and Quality Information in Health Care: Creation of an SEC for Health Care , 10 J. Health Care L. & Pol'y 363, 366 (2007).
[12] Haygood , 356 S.W.3d at 393.
[13] See George A. Nation III, Determining the Fair and Reasonable Value of Medical Services: The Affordable Care Act, Government Insurers, Private Insurers and Uninsured Patients , 65 Baylor L. Rev. 425, 459 (2013) ("There is a significant body of research suggesting that the reimbursement[ ] rates paid by government insurers such as Medicare and Medicaid are actually below fully allocated cost for most hospitals."); Peters, supra note 11 at 367 ("Medicare's reimbursement rates do not typically cover the actual cost of providing health care to a hospital's patients.").
[14] Haygood , 356 S.W.3d at 393.
[15] See George A. Nation, III, Obscene Contracts: The Doctrine of Unconscionability and Hospital Billing of the Uninsured , 94 KY. L.J. 101, 104 (2005-2006) (stating that a hospital's list prices "are generally at least double and may be up to eight times what the hospital would accept as payment in full for the same services" from a private or governmental insurer), cited in Haygood , 356 S.W.3d at 393 n.17.
[16] Haygood , 356 S.W.3d at 394.
[17] Id. n.20.
[18] Id. at 393 n.14.
[19] Of course, a healthcare provider is free to charge whatever it chooses for its services, whether reasonable or not, just as any service provider can, and the consumer is free to choose another healthcare provider that charges less. But patients are not usually in a position to investigate and compare different hospitals' charges, and obviously they cannot do so when they present to the emergency room. Amici curiae Christus Health and Texas Health Resources argue that not all charges secured by a lien under the Hospital Lien Act need be reasonable. They point out that a lien can include only reasonable and necessary charges for a physician's emergency hospital care, Tex. Prop. Code § 55.004(c), and does not cover charges for emergency medical services or other services that exceed a reasonable and regular rate, id. § 55.004(d)(1), (g)(1), but otherwise "[a] hospital lien ... is for the amount of the hospital's charges for services provided", id. § 55.004(b). But see Daughters of Charity Health Servs. v. Linnstaedter , 226 S.W.3d 409, 411 (Tex. 2007) (stating that "[t]he lien amount cannot be more than 'a reasonable and regular rate' " (quoting § 55.004(d)(1) ) ); Bashara v. Baptist Mem'l Hosp. Sys. , 685 S.W.2d 307, 309 (Tex. 1985) (stating that "the statute ... is replete with language that the hospital recover the full amount of its lien, subject only to the right to question the reasonableness of the charges comprising the lien"). North Cypress does not argue that it can charge Roberts unreasonable prices for the services it provided her. Rather, it argues that its charges to her were reasonable.
[20] See 356 S.W.3d at 395 ("An adjustment in the amount of [a provider's full] charges to arrive at the amount owed is a benefit to the insurer, one it obtains from the provider for itself, not for the insured.").
[21] 532 S.W.3d 794, 799-800, 809 (Tex. 2017) (orig. proceeding).
[22] Id. at 801.
[23] Id. at 812-813.
id="fr24">24 ids="12387518" index="59" url="https://cite.case.law/sw3d/532/794/#p810">See id. at 810-812.
[25] In re Nat'l Lloyds Ins. Co. , 449 S.W.3d 486, 487-488 (Tex. 2014) (per curiam) (orig. proceeding).
[26] Id. at 489.
[27] Id.
[28] Id.
[29] Id. (quoting Texaco, Inc. v. Sanderson , 898 S.W.2d 813, 815 (Tex. 1995) (per curiam) (orig. proceeding) ); see, e.g. , In re State Farm Lloyds , 520 S.W.3d 595, 611 (Tex. 2017) (orig. proceeding) ("Reasonable discovery does not countenance a 'fishing expedition.' "); In re Alford Chevrolet-Geo , 997 S.W.2d 173, 181 (Tex. 1999) (orig. proceeding) ("[D]iscovery may not be used as a fishing expedition or to impose unreasonable discovery expenses on the opposing party.").
[30] In re Nat'l Lloyds Ins. Co. , 532 S.W.3d 794, 813 (Tex. 2017) (orig. proceeding) (omission in original) (quoting Tex. R. Evid. 403 ).
[31] Tex. R. Civ. P. 192.4(b) ; see also In re State Farm Lloyds , 520 S.W.3d at 615 ("[P]roportionality is the polestar.").
[32] Roberts has pleaded claims under the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code § 17.41 et seq. , the Texas Debt Collection Act, Tex. Fin. Code § 392.001 et seq. , and the Fraudulent Lien Act, Tex. Civ. Prac. & Rem. Code § 12.001 et seq. She seeks actual and exemplary damages, attorney fees, and declaratory relief. She also claims that North Cypress' lien is invalid because she was never formally admitted for treatment, but this claim does not involve the discovery dispute before us.
[33] Inst. for the Advancement of the Am. Legal Sys., Final Report on the Joint Project of the American College of Trial Lawyers Task Force on Discovery and Civil Justice and IAALS 2 (2009).
[34] In re Nat'l Lloyds , 532 S.W.3d at 813 (quoting In re Alford Chevrolet-Geo , 997 S.W.2d at 180 ).
--------