# IN THE SUPREME COURT OF TEXAS

No. 19-1022

IN RE K&L AUTO CRUSHERS, LLC AND THOMAS GOTHARD, JR., RELATORS

ON PETITION FOR WRIT OF MANDAMUS

JUSTICE HUDDLE, joined by JUSTICE BLAND, and joined by JUSTICE GUZMAN as to Parts II(A) and III only, concurring.

I agree with the Court that some of the discovery sought by Relators is relevant under our holding in *In re North Cypress Medical Center Operating Co.*, 559 S.W.3d 128 (Tex. 2018) (orig. proceeding). But I disagree that the Relators in this case, even after "narrowing" the document requests, sought only the information that *North Cypress* concluded was discoverable. And as we stated just a year earlier in *In re State Farm Lloyds*, "the simple fact that requested information is discoverable . . . does not mean that discovery must be had." 520 S.W.3d 595, 605 (Tex. 2017) (orig. proceeding) (quoting *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004)). More discovery is not necessarily better. Proportionality—the measure of the marginal value of the requested discovery to a particular case when weighed against its costs—must be the touchstone.

As this Court has recognized, however, a proportionality inquiry does not lend itself to bright-line rules. Balancing the many relevant factors can be fact-intensive and complex, particularly where, as here, discovery is sought from nonparties, which trial courts "must" protect from undue burden or expense in answering subpoenas. TEX. R. CIV. P. 176.7. Although I believe

the trial court was within its discretion to deny the requested discovery given the document requests' broad scope, I agree with the Court's ultimate decision to allow the parties and trial court the opportunity to brief and decide the appropriate scope of discovery with the benefit of today's decision. I write separately to emphasize that the nonparty discovery the Court authorizes today will not be appropriate in every personal-injury case—or even as to every provider in a particular personal-injury case—and to provide guideposts for trial courts exercising their discretion to balance the value of health care pricing discovery in these cases against its potentially significant costs.

## I

Kevin Walker sued Relator Thomas Gothard, an employee of Relator K & L Auto Crushers, alleging Gothard caused a car accident that injured Walker. Believing Walker's claimed $1.2 million in past medical expenses to be excessive, K & L subpoenaed some of Walker's medical providers, seeking a wide array of information related to the medical providers' billing practices and rates over a period of several years. In their first iteration, some of the subpoenas each requested more than 70 categories of documents.

Three medical providers—Saint Camillus Medical Center, Pine Creek Medical Center, and Dr. Andrew Indresano—moved to quash. Among other things, they each argued the requests were "facially overbroad and not reasonably tailored in scope or time or to the issues presented in this lawsuit." All three submitted affidavits from their respective records custodians in support of their motions. Each one averred that the provider lacked the ability to search the relevant records electronically, increasing the burden to respond. Following a hearing, the trial court granted the motions and quashed all three subpoenas.

2

K & L moved for partial reconsideration of the trial court's order, narrowing the number of document requests. Yet K & L still requested, among other things, *all communications* between the providers and any manufacturer, seller, and distributor of any device the provider used in treating Walker. In response, the providers argued (among other things) that the revised requests were still "not proportional to the needs of the case." The trial court denied the motion for reconsideration, and K & L petitioned for mandamus relief.

## II

### A

The Court correctly concludes that information regarding the negotiated rates a medical provider charges and accepts for particular services and devices is relevant to whether the amounts charged by that provider and sought as damages by the plaintiff in a personal-injury case are reasonable. Texas Rule of Civil Procedure 192.3 provides that information is generally discoverable if it "is not privileged and is relevant to the subject matter of the pending action." Tex. R. Civ. P. 192.3(a). And *North Cypress* holds that narrowly tailored requests for this information may be granted. *See* 559 S.W.3d at 130 (identifying the requests at issue), 137 (holding the requested discovery was proper). But Rule 192.4 constrains the scope of discovery as to otherwise discoverable information. It states that discovery "should be limited by the court if it determines, on motion or on its own initiative and on reasonable notice," that "the burden or expense of the proposed discovery outweighs its likely benefit." Tex. R. Civ. P. 192.4. We recognized in *State Farm Lloyds* that Rule 192.4 imposes a "proportionality inquiry" that requires "case-by-case balancing" in light of seven different factors. 520 S.W.3d at 607.[1] And trial courts

---

[1] The seven factors are (1) the likely benefit of the requested discovery, (2) the needs of the case, (3) the amount in controversy, (4) the parties' resources, (5) the importance of the issues at stake in the litigation, (6) the importance of the proposed discovery in resolving the litigation, and (7) any other articulable factor bearing on proportionality. *State Farm Lloyds*, 520 S.W.3d at 608–12.

3

must also consider Rule 176.7, which applies to nonparty discovery requests[2] and places a duty on the party *seeking* discovery to avoid undue burden or expense. It states:

> A party causing a subpoena to issue must take reasonable steps to avoid imposing undue burden or expense on the person served. In ruling on objections or motions for protection, the court must provide a person served with a subpoena . . . protection from undue burden or expense. . . .

TEX. R. CIV. P. 176.7.

**B**

The Court's rationale for granting mandamus relief today rests on its conclusion that K & L narrowed the number and scope of its requests to cover only the types of information we held discoverable in *North Cypress*. *Ante* at __ ("K & L Auto's narrowed requests are nearly identical to those we approved of in *North Cypress*."). But that's not the case. As the Court notes, the discovery in *North Cypress* included only a few requests, each of which sought narrow categories of information:

- a request for production of contracts regarding the rates private insurers pay for the services provided to the plaintiff;

- interrogatories requesting the hospital state its Medicare and Medicaid reimbursement rates for the services provided to the plaintiff; and

- a request for production of the annual cost report provided to Medicare in five particular years.

*Ante* at __ n.13; *see also N. Cypress*, 559 S.W.3d at 130 (quoting the specific discovery requests). K & L's discovery requests here were far broader, even after being narrowed in connection with K & L's motion for reconsideration. For example, with respect to Saint Camillus Medical Center, K & L's motion for reconsideration requested—for each of seventeen devices for which Saint Camillus billed Walker—that Saint Camillus produce "[a]ll documents that constitute, evidence,

---

[2] Discovery from a nonparty requires service of a subpoena. TEX. R. CIV. P. 205.1.

4

refer, or relate to invoices, billing statements, demands for payment, and charges you received" for that particular device. K & L also sought "[a]ll documents that constitute, evidence, refer, or relate to agreements" and "communications" between Saint Camillus and the manufacturer, seller, and distributor of each particular device. The motion for reconsideration similarly includes several requests directed to Dr. Indresano and Pine Creek containing the same or similar language. Thus, K & L—even after limiting the discovery it sought in its motion for reconsideration—still requested production of (1) every invoice the provider sent anyone for any device for which it billed Walker; (2) every email or other communication the provider sent or received from any manufacturer, seller, or distributor of any device for which the providers billed Walker; and (3) every document that relates to any agreement for the purchase of such devices. The trial court would have been within its discretion to deny these requests on the basis that they were not narrowly tailored, as were the requests in *North Cypress*.[3]

The Court also faults the providers for failing to present new objections and evidence in response to the "substantially narrowed" requests. *Ante* at __. But this incorrectly suggests that Rule 192.4's burden to limit discovery to what is necessary and proportional to the case rests solely on the entity resisting discovery. While we stated in *State Farm Lloyds* that a party objecting to discovery under Rule 192.4 must "support proportionality complaints with evidence," 520 S.W.3d at 614, we also wrote that "the party *seeking* discovery must comply with proportionality limits on

---

[3] At the hearing on K & L's motion for reconsideration, its counsel stated that it was trying to "focus the Court on the specific discovery requests we made that we think are expressly authorized by [*North Cypress*]." The Court faults the trial court for purportedly failing to acknowledge or consider this "narrowing" of the subpoenas when it denied the rehearing motion. *Ante* at __. But abandoning a number of requests is not the same as reducing the scope of the requests that were not abandoned. As noted above, the remaining requests were broader than what we allowed in *North Cypress*. While K & L argued that its motion for reconsideration narrowed its subpoenas to those requests that were along the lines of what we approved in *North Cypress*, the trial court would have been within its discretion to conclude otherwise. In any event, even if K & L's comments at the oral hearing are read charitably to mean that K & L was asking the trial court to further narrow the scope of the remaining requests to conform to those in *North Cypress*, I would not conclude that a trial court abuses its discretion by refusing to compel compliance with document requests that had not yet been presented in writing, to either the trial court or opposing counsel.

discovery requests and 'may well need to . . . make its own showing of many or all of the proportionality factors.'" *Id.* (quoting *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 468–69 (N.D. Tex. 2015)) (emphasis added). And we did not suggest that each time the party seeking discovery modifies its requests, even substantially, a nonparty resisting that discovery must affirmatively address each newly revised discovery request with new evidence. Requiring successive rounds of objections and proof from a nonparty undercuts the principle that trial courts must protect them from undue burden and cost. TEX. R. CIV. P. 176.7.

In any event, the trial court here could have concluded that the evidence the providers presented in the first instance was sufficient to address the revised requests. The affidavit from Saint Camillus's records custodian, for example, states that the requests for documents relating to agreements governing the amounts charged to various providers are burdensome and expensive because "Saint Camillus's electronic records software is not configured to allow Saint Camillus to search for reimbursement rates for particular health insurance plans, policies, or procedures."[4] Saint Camillus averred it

> would be required to search through open and closed patient records to individually locate patients who previously received particular procedures, who were covered by particular plans or policies, for whom claims were submitted to those plans or policies, and for whom reimbursement rates were paid by the insurers. Then, again, any records would need to be individually reviewed and redacted . . . . This would require a significant and unreasonable dedication of time, personnel, and resources from a nonparty to this litigation.

Though adduced in response to the first iteration of K & L's subpoenas, these sworn statements apply equally to K & L's narrowed requests at issue in its motion for reconsideration. Given this

---

[4] The Court cites a court of appeals opinion stating that a party to the lawsuit cannot prove it was unduly burdened by discovery when the burden results from the responding party's own discretionary decisions. *Ante* at __ (citing *In re State Farm Lloyds*, 519 S.W.3d 647, 657 (Tex. App.—Corpus Christi–Edinburg 2015, orig. proceeding) (mem. op.)). Regardless of whether the providers' affidavits were sufficient to establish "undue" burden under Rule 192.6, the affidavits were still relevant for determining whether the burden or expense of discovery outweighed the likely benefit under Rule 192.4 and whether K & L took reasonable steps to avoid imposing undue burden or expense on a nonparty under Rule 176.7.

evidence, the trial court was well within its discretion to conclude that the requests, even after being narrowed, remained overbroad and were not proportional to the needs of the case.

III

In light of the Court's holding that *North Cypress* applies in the personal-injury context, I agree with the Court's decision to allow K & L the opportunity to further narrow its requests, the providers the opportunity to object and adduce further evidence in response, and the trial court to impose reasonable limits on the discovery, all with the benefit of today's opinion. Consideration of the following factors, along with those we articulated in *State Farm Lloyds*, should guide the proportionality analysis on remand and in future cases. *See* 520 S.W.3d at 608–12 (reciting factors to consider in proportionality analysis).

- **Existence of letters of protection**. The existence of a letter of protection between the claimant and a provider weighs in favor of authorizing pricing discovery from that provider because the provider has agreed to take a financial stake in the outcome of the case. In doing so, a provider forfeits a degree of the protection our rules afford disinterested third parties subjected to third-party discovery. This factor often may be dispositive.

- **Value of claimed past medical expenses**. The need to subpoena a provider increases with the amount the provider billed the claimant. Value should be considered on a provider-by-provider basis because providers who billed relatively low amounts should not be burdened by a pricing subpoena merely because another one of the claimant's providers' bills—or the total of claimed medical expenses— is high.

- **Availability of pricing data from alternative sources**. Pricing databases for common health care services are already available, and governmental regulations will soon require additional disclosure of health care pricing information. *See* Medicare and Medicaid Programs: Price Transparency Requirements for Hospitals, 84 Fed. Reg. 65524, 65602–06 (Nov. 27, 2019) (to be codified at 45 C.F.R. pt. 180). The need for a pricing subpoena is at its lowest when the service at issue is routine and pricing data is publicly available. It increases when the party seeking discovery adduces evidence that the services or devices for which the provider billed the claimant are rare or not included in publicly available databases.

- **Ruling on section 18.001 counteraffidavits**. Relators' briefing suggests the providers' motion to strike Relators' counteraffidavits—which some courts have held justifies excluding defendants' experts' testimony challenging

7

reasonableness—weighs in favor of authorizing pricing discovery from providers. But we recently held a trial court's decision to strike a counteraffidavit cannot serve as a basis for excluding evidence. *In re Allstate Indem. Co*, ____ S.W.3d ___ (Tex. 2021) (orig. proceeding). Because a trial court's decision to strike a counteraffidavit does not affect the ability of a defendant to challenge reasonableness, it should have no bearing on the proportionality analysis at issue here.

In evaluating proportionality of requests for pricing discovery from nonparty health care providers, trial courts must remain mindful of the potentially high costs of widespread use of these subpoenas in personal-injury cases. Walker's was one of more than 50,000 injury or damage cases involving a motor vehicle filed statewide in 2018.[5] In 2019, the number of such filings reached an all-time high: 55,300.[6] While the mandamus record shows that only three providers opposed K & L's subpoenas, it reflects that Walker was treated by fifteen. If one assumes that each of the tens of thousands of car-wreck cases filed in Texas each year involves a similar number of providers, and that the practice of issuing pricing subpoenas to nonparty providers in these cases will become widespread,[7] the potential systemic cost to health care providers becomes eye-popping. Whether this risk becomes reality depends entirely on court supervision.

_____
Rebeca A. Huddle
Justice

**OPINION DELIVERED**: May 28, 2021

---

[5] Annual Statistical Report for the Texas Judiciary, Fiscal Year 2019, at 5, https://www.txcourts.gov/media/1445760/fy-19-annual-statistical-report.pdf.

[6] *Id.*

[7] 55,300 x 15 = 829,500.