

## Fourth Court of Appeals
### San Antonio, Texas

## DISSENTING OPINION

No. 04-25-00022-CV

**IN RE EGT HOLDINGS, LLC** d/b/a Stephens Roofing & Remodeling and Thomas Patrick Suitt

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-CI-23750
Honorable Nadine Melissa Nieto, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice
Dissenting Opinion by: Velia J. Meza, Justice

Sitting:        Lori I. Valenzuela, Justice
                H. Todd McCray, Justice
                Velia J. Meza, Justice

Delivered and Filed: June 11, 2025

Nonparty discovery is subject to the same relevance and proportionality overlay as any other discovery. To resist a discovery request, one must object. TEX. R. CIV. P. 193.2. Objections based upon proportionality or undue burden require supporting evidence, while relevance objections do not. *See In re Google, LLC*, 705 S.W.3d 479, 485 (Tex. App.—Austin [15th Dist.] 2025, orig. proceeding) (summarizing Texas Supreme Court precedent). "A discovery order that denies a party's requested discovery on improper grounds and thus prevents that party from developing a defense that goes to the heart of its case is an abuse of discretion for which mandamus may be appropriate." *In re Liberty Cnty. Mut. Ins. Co.*, 679 S.W.3d 170, 174 (Tex. 2023) (orig. proceeding) (per curiam).

I would hold the trial court abused its discretion by completely denying discovery of negotiated rates charged by a treating physician, in the absence of any evidence supporting proportionality and undue burden objections, and that there is no adequate remedy by appeal. Because the majority denies relief, I respectfully dissent.

### BACKGROUND

This personal injury suit arises from a two-vehicle collision between Thomas Suitt, an employee of EGT Holdings, LLC, (collectively, EGT) and real parties in interest, Christopher Blaha and Angel Diaz. At issue is discovery relating to the reasonable cost of medical treatment Mr. Blaha and Mr. Diaz received from Dr. Frank K. Kuwamura, III.

Dr. Kuwamura is the owner of MD Spine Care and Associates, PLLC (MD Spine) where he "treats patients that either have no insurance or elect not to use insurance." Dr. Kuwamura also owns and operates Frank K. Kuwamura, III, MD, PA, a professional association that does business as Innovative Spine, which operates out of the same offices as MD Spine.[1] As explained by Innovative Spine, it is an "in[-]network contracted medical services provider with various health insurance companies and Medicare while MD Spine [] is not a provider with health insurance and Medicare."

Mr. Blaha and Mr. Diaz asserted claims of negligence and vicarious liability against EGT. Their alleged damages include reasonable and necessary medical expenses and they designated Dr. Kuwamura as an expert to offer his opinion on past and future medical treatments, and the reasonableness of expenses related to such treatments. Mr. Blaha's and Mr. Diaz's medical bills—

---

[1] Aside from the shared physical locations and Dr. Kuwamura's services, is unclear what else MD Spine and Innovative share, e.g., equipment, space, or administrative support services.

estimated at around $400,000 for past and future treatment—are secured by a letter of protection provided by their attorney to MD Spine and Dr. Kuwamura.[2]

During discovery, EGT served Dr. Kuwamura with a subpoena for oral testimony and for documents. The subpoena requested various documents pertaining to reimbursement rates and contracts with in-network private insurers and public payers for the same procedures performed or recommended to be performed on the real parties in interest. Dr. Kuwamura appeared for the deposition and provided testimony. However, when asked about his billing practices, reimbursement rates, contracts with insurance companies, or any questions relating to Innovative Spine, Dr. Kuwamura declined to answer. As a result, EGT filed a motion to compel Dr. Kuwamura's responses and served Innovative Spine with a subpoena for documents regarding the same subject matter. Mr. Blaha and Mr. Diaz filed a motion to quash the subpoena and for a protective order. Innovative Spine responded to the motion to compel and argued EGT's motion to compel should be denied.

After a hearing, the trial court denied EGT's motion to compel and granted the motion to quash. This petition for writ of mandamus followed.

## 1    At least some of the discovery requests are relevant.

Some of the discovery requests at issue ask for negotiated insurance rates relating to procedures performed on Mr. Blaha and Mr. Diaz. Those requests are indistinguishable from requests the Texas Supreme Court has repeatedly found relevant to the reasonableness of medical expenses. *See In re ExxonMobil Corp.*, 635 S.W.3d 631 (Tex. 2021) (orig. proceeding) (per curiam); *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239 (Tex. 2021) (orig. proceeding); *In re N. Cypress Medical Ct. Operating Co.*, 559 S.W.3d 128 (Tex. 2018) (orig. proceeding). And the

---

[2] A letter of protection is a promise to pay a doctor for medical services to a patient from any recovery the patient obtains from a lawsuit. *See, e.g.,* Tex. Comm. On Professional Ethics, Op. 625, 76 TEX. B.J. 362 (2013).

requests are indistinguishable from discovery this court previously held was improperly quashed. *See In re Teran*, No. 04-21-00436-CV, 2022 WL 849764, at *3 (Tex. App.—San Antonio Mar. 23, 2022, orig. proceeding) (mem. op.) ("[T]he discovery relators seek here is relevant and is not overbroad as a matter of law.").

Accordingly, the requests are not overbroad *in toto* if they are "tailored to focus on rates for the same services at the same times" at issue in the case. *ExxonMobil*, 635 S.W.3d at 635 (citing *K & L Auto Crushers*, 627 S.W.3d at 253).

## 2    *K & L Auto Crushers* and *ExxonMobil* control.

In *K & L Auto Crushers*, the Texas Supreme Court held a trial court abused its discretion by completely denying discovery of negotiated rates charged by a treating physician. 627 S.W.3d at 257-58. The supreme court explained that while the requested information was relevant to the reasonableness of medical expenses, not "*all communications* or *all documents* regarding those topics are automatically discoverable." *Id.* at 251 (emphasis in original). Instead, "[p]roportionality must control the extent to which a trial court orders such relevant information discoverable." *Id.*

Proportionality means that "courts should make an effort to impose reasonable discovery limits, particularly when the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. at 248 (cleaned up)[3]; *see also In re State Farm Lloyds*, 520 S.W.3d 595, 607–612 (Tex. 2017) (orig. proceeding) (laying out seven prong "case-by-case balancing" test for proportionality).

But "a party resisting discovery" must "support proportionality complaints with evidence." *K & L Auto Crushers*, 627 S.W.3d at 253 (internal quotation marks omitted). "[A] claim of undue burden cannot be conclusory—it must be supported by some demonstration or evidence of the

---

[3] *See* Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143 (2017) (discussing the "cleaned up" parenthetical).

burden," and "failure to provide some evidence prevents a trial court from weighing the burden." *Id*. at 254 (summarizing *In re State Farm Lloyds*, 519 S.W.3d 647, 657 (Tex. App.—Corpus Christi–Edinburg 2015, orig. proceeding) (per curiam) (mem. op.)); *see also Teran*, 2022 WL 849764, at *3 (holding that hospital's conclusory assertion that production of negotiated rate information was unduly burdensome was "not sufficient" to carry its burden to support withholding discovery). The supreme court concluded that "at least some of the information" requested was relevant and that "the providers failed to establish the narrowed requests were overbroad or unduly burdensome and harassing, or that they sought confidential information that could not reasonably be protected." *K & L Auto Crushers*, 627 S.W.3d at 258; *see also ExxonMobil*, 635 S.W.3d at 634–36 (citing *K & L Auto Crushers* and applying the same logic).

### 3   Real parties in interest have produced no evidence supporting their proportionality objections.

Innovative Spine has provided no evidence of undue burden. Before the trial court, Mr. Blaha and Mr. Diaz argued in their motion to quash (1) relevance, (2) confidentiality, and (3) the collateral source rule. At the hearing, counsel for Innovative Spine first argued it was improperly served and that the information sought was irrelevant.[4] As to proportionality, counsel argued the medical bills at issue were insignificant compared to the damages being requested. For the "collateral source" argument, counsel explained that the information requested would ultimately be inadmissible because it is unfairly prejudicial. Finally, counsel for Mr. Blaha and Mr. Diaz argued the requested information was irrelevant to any purported "failure to mitigate."

In response to the petition for writ of mandamus, Mr. Blaha and Mr. Diaz argue the requested discovery is irrelevant, unduly burdensome and a delay tactic because Dr. Kuwamura had already sat for a deposition. And Innovative Spine's argument is simply that the requests are

---

[4] Innovative Spine later abandoned the improper service argument.

burdensome because EGT has not taken "reasonable steps to avoid imposing undue burden" and because the requests are harassing.

Rather than provide evidence showing the cost of production, the time required to respond, or that the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive, real parties' arguments focus on relevance and confidentiality. *Cf.* TEX. R. CIV. P. 192.4 (allowing a trial court discretion to limit the scope of discovery). Their evidence regarding proportionality and undue burden consists of nothing more than conclusory statements. As the parties seeking to resist discovery, real parties "failed to establish, beyond conclusory assertions, why the burden or expense entailed in responding to the requests outweighs the likely benefit, or why the requests are 'unreasonably cumulative or duplicative.'" *ExxonMobil*, 635 S.W.3d at 635 (quoting TEX. R. CIV. P. 192.4); *see also K & L Auto Crushers*, 627 S.W.3d at 253–54 (holding that a claim of undue burden must be supported by evidence and conclusory statements are insufficient). And "[e]ven if the requested documents contain confidential information or trade secrets, [real parties must show] that an appropriate protective order will not address their concerns." *K & L Auto Crushers*, 627 S.W.3d at 256. Real parties have not carried their burden to resist discovery and thus were not entitled to withhold the requested information.

## 4 Dr. Kuwamura's separation of his medical practice into two businesses based on insurance availability does not change the outcome on this record.

Innovative Spine additionally argues that because MD Spine is the "creditor of the medical debt"—because it charged for the medical treatment at issue—EGT must "in effect" pierce the corporate veil to seek discovery from Innovative Spine.

The primary legal benefit of forming a business organization is to limit liability of investors and officers of the organization. Disregarding the corporate fiction—"piercing the corporate veil"—is a theory of derivative liability. The doctrine is divided between "substantive" piercing

for the purpose of imposing liability, and "jurisdictional" piercing, for the purpose of establishing personal jurisdiction. See *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174 (Tex. 2007) (examining state and federal law regarding veil-piercing).

Importantly, there is no such concept as "discovery" veil-piercing. Instead, the discovery rules allow for nonparty discovery without any special rule respecting corporate structure. As the supreme court has explained, nonparty discovery is not subject to any distinct, bright-line principles other than those provided by the rule itself:

> We are sensitive to the fact that the providers are not parties to this suit, and we agree that their status as non-parties is relevant to whether the requests are unduly burdensome. But to promote the resolution of disputes based on what the facts reveal rather than what facts are concealed, our rules specifically permit parties to compel non-parties to produce relevant information. Rule 205 addresses this burden by requiring the party requesting the information to fully reimburse the nonparty's reasonable costs of production, but it imposes no other special limits on non-party discovery.

*K & L Auto Crushers*, 627 S.W.3d at 254 (cleaned up); *see also ExxonMobil*, 635 S.W.3d at 635 ("While the [medical provider entities] are not parties to this suit—a relevant fact when considering whether discovery requests present an undue burden, [] our rules expressly authorize discovery of relevant information from nonparties."); *see also Burrhus v. M & S Supply, Inc.*, 933 S.W.2d 635, 640 (Tex. App.—San Antonio 1996, writ denied) ("[R]ules that are specific and clear are given their plain meaning unless a literal interpretation would produce an absurd result or defeat the intent of the enacting body.").

Here, EGT has not sued Dr. Kuwamura or his professional association based on a theory of derivative liability. Rather, EGT seeks information relevant to the reasonableness of medical charges incurred when Dr. Kuwamura treated the real parties in interest. To that end, EGT propounded discovery requests on Dr. Kuwamura and Innovative Spine. And the record unequivocally reflects that Dr. Kuwamura owns and operates the two businesses out of the same

physical locations, providing the same medical care, with the only identified distinction being the method of collecting payment: Innovative Spine bills insurance, while MD Spine does not.

The same relevance and proportionality principles applied by the Texas Supreme Court in *K & L Auto Crushers*, *ExxonMobil*, *North Cypress*—and by this court in *Teran*—should apply to this case. Real parties have identified no authority to the contrary.

**5    EGT has no adequate remedy by appeal.**

The reasonableness of Dr. Kuwamura's medical charges goes to the heart of EGT's defense, "if the charges are unreasonable, they are not recoverable." *K & L Auto Crushers*, 627 S.W.3d at 256–57; *Teran*, 2022 WL 849764, at * 5 ("*K & L Auto* and *ExxonMobil* are directly on point."). And because they have been barred from discovery regarding Dr. Kuwamura's usual rates, EGT is limited "to offering speculative evidence rather than the provider['s] actual agreed rates with insurers and other payors." *K & L Auto Crushers*, 627 S.W.3d at 257. For same reasons articulated in *K & L Auto Crushers*, EGT has no adequate remedy by appeal.

CONCLUSION

"[E]vidence of [a medical provider's] rates is relevant to determining whether they are reasonable." *ExxonMobil*, 635 S.W.3d at 635 (citing *K & L Auto Crushers*, 627 S.W.3d at 253). At least some of the discovery requests at issue here are limited to "rates for the same services at the same times," and thus such requests are not overbroad. *ExxonMobil*, 635 S.W.3d at 635.[5] And it is the party seeking to resist discovery that must carry the evidentiary burden to show undue burden and a lack of proportionality. *Google*, 705 S.W.3d at 485. Absent any supporting evidence,

---

[5] To the extent the requested discovery concerns negotiated rate information for unrelated services, such requests are overbroad and appropriately quashed. However, while it is the trial court's role to impose reasonable limitations on the scope of discovery, the court "may not simply deprive [relators] from obtaining the narrow categories of information that [the Texas Supreme Court has] previously held are relevant and discoverable on the reasonableness of medical expenses." *K & L Auto Crushers*, 627 S.W.3d at 258.

the trial court was precluded from quashing the discovery requests *in toto* based on undue burden. *K & L Auto Crushers*, 627 S.W.3d at 254. The trial court thus abused its discretion and there is no adequate remedy by appeal. *Id.* at 256–57.

Because this case presents a legal question materially indistinguishable from that already decided by this court in *Teran* and by the Texas Supreme Court in *K & L Auto Crushers*, I would conditionally grant the writ of mandamus and order the trial court to vacate its order granting real parties' motion to quash and denying relators' motion to compel. *See Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 798 (2014) ("*[S]tare decisis* is a foundation stone of the rule of law."); *Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022) ("*Stare decisis* amounts to a judicial commitment to precedent, which is an essential ingredient in the rule of law itself.").

Velia J. Meza, Justice